THE PENCOYD.

(District Court, D. New Jersey. January 29, 1902.)

TUGS AND TOW—LIABILITY OF TUG FOR LOSS OF TOW—IMPROPER COUPLING.
Evidence considered, and *held* insufficient to sustain the allegation of the libel that the sinking of a barge while being towed with others was due to the fault of the tug in improperly coupling the barges to each other.

In Admiralty. Action against tug for loss of tow.

Linsly Rowe and James J. Macklin, for libelant.
James Armstrong, for claimant.

KIRKPATRICK, District Judge. This libel is filed by Albert J. Cook, as the owner of the barge Swenson, which sank in the East river in February, 1899, owing, as is alleged, to the negligence of the steam tug Pencoyd. The libel sets out that the barge Swenson, laden with a cargo of coal, was, with five other boats, taken in tow by the Pencoyd, to be transported from Port Liberty, N. J., to foot of Stanton street, East river, New York; that the tow was made up under the direction of the master of the Pencoyd, and in such manner as to cause the captain of the Swenson to object thereto; that, in consequence of the improper coupling of the tow, the barge Swenson sustained injuries which caused her to sink and become a total loss.

It appears from the testimony in the case that both the North and East rivers were at the time of the accident full of heavy floating ice, and it is suggested in the libel that the method of coupling the tow caused the sterns of the Swenson and Philadelphia & Reading Barge No. 5, which was abreast of her, and upon her port side, to be drawn together, so that the ice accumulated between the boats, and caused the injury complained of. While it is apparent that the drawing together of the sterns of the Swenson and Philadelphia & Reading Barge No. 5 would have had the effect to prevent the ice from passing between them, and, by becoming tightly packed in the space, thereby have had a tendency to cut through the boats, and in that way caused her to spring a leak, yet there is not a scintilla of evidence that the sinking of the barge was due to that cause. On the contrary, the testimony of libelant's witnesses tends to show that the injury which the barge sustained was due to a bumping by the boat astern of her in the tow, which bumping was the result of improper coupling. The allegation of libelant is that the starboard bow of

the hindmost boat was attached to the starboard side of the Swenson, and that her port bow was attached to the port side of Philadelphia & Reading Barge No. 5, and that, in consequence, as the tow veered from a straight line, the McLain (the boat astern of the Swenson) would bump into the stern of one of the boats ahead of her, at one time the Swenson, and then Philadelphia & Reading Barge No. 5, until finally she struck the Swenson such a crushing blow in the stern that she sprang a leak and in 15 minutes sank by the head. The testimony upon which libelant relies is that of Cook, the owner of the Swenson, who tells the story as above, Lyttle, the captain of the Swenson, and Brundage, the captain of the McLain. But the testimony of Cook is impeached by the story which he told to Bloomsbury immediately after the sinking of his boat, when he made no mention of any bumping, but supposed the accident was due to the ice. Brundage's evidence is contradictory of itself and inconsistent with his letter written soon after the occurrence. The captain of the Philadelphia & Reading Barge No. 5 testified that, although he was on the deck of his barge from the time the tow left Port Liberty until after the accident, he was not aware of any bumping of his boat, as alleged by Cook, the libelant; and the fact that the Philadelphia & Reading Barge No. 5 did not show any signs of injury upon an examination made soon afterwards would seem to corroborate his statement. It also appears that an inspection of the McLain failed to discover that the McLain had sustained any damage from the alleged bumping, and it does not appear that any claim therefor has ever been made. It is, of course, immaterial whether the tow was properly coupled or not, unless it be shown that the damage to the Swenson resulted from improper coupling, which is the negligence complained of.

The evidence fails to show to the satisfaction of the court that the sinking of the Swenson was due to the negligence of the claimant. The burden of proof being on the libelant, his libel must be dismissed.